Would both the attorneys that are going to present the arguments today step up and identify yourselves for the record? My name is Mary Labreck. I'm an assistant attorney general and here representing the Illinois Student Assistance Commission. Good morning. My name is Jeffrey Schwab. I'm the attorney for the McLean F. Appellee grant. All right. So each of you will have about 15 minutes, and from that, Ms. Labreck, you may save out some time for rebuttal. All right? Okay. You may be seated and you may proceed, Ms. Labreck. Good morning, Your Honors. Counsel. May it please the court. This case is about whether the Illinois Freedom of Information Act required the commission, at the time that Mr. Timpone filed his request, to disclose the names and addresses of persons who received need-based grants under the state's monetary award program in 2015, thereby violating both the privacy of those persons and their families and also forcing the commission to contact with the United States Department of Education not to disclose information obtained from transmission of the free application for financial aid, the FAFSA form. Our position is that FOIA did not require this for multiple reasons. In fact, the names of the monetary award program recipients qualified for exemption under all three of the basic exemptions under FOIA, 7.1a, 7.1b, and 7.1c. Under 7.1a, there is an exemption for disclosure by federal or state law or rules and regulations implementing federal or state law. And we have a relevant regulation here, the commission's regulation at Section 2700.55. It contains a prohibition against disclosure, which is evident in three ways. The beginning of the regulation says that personally identifiable information pertaining to an applicant or participant in the program, in any of the commission's programs, is confidential. It goes on to say that the information shall be governed by applicable federal and state privacy laws and also that it shall not be used, shared, or accessed for any purpose other than the purpose for which it is provided. Is that directed to state agencies or state, like ISAC? It is both. It is ISAC's regulation, and it's both directed to ISAC itself, as apparent in the beginning of it that talks about information accessed by the commission. And it also refers to persons who receive any information from ISAC. And it clearly includes the names of the persons for three reasons. First, it refers to personally identifiable information, which was the kind of language that the Supreme Court in Lieber said you had to use if you wanted to protect names among the personally identifiable information. And second, the implementing regulations, it refers to federal law, and the federal laws include names. When they use the precise term, the implementing regulations of FERPA specifically state that names are included in the concept of personally identifiable information. And then the last sentence of the regulation states that names of the state scholars are exempted from this regulation, which suggests that it does apply to other names. The circuit court and Timponi thought that this was inconsistent with another regulation of the commission, Section 273530, which concerns procedures from the MAP program, because it's stated there that financial information concerning income, asset value, and non-taxable income would be kept confidential. But there's no conflict here, because this is not, Section 27.30 did not say that these were the only things that were to be kept confidential, and it did not propose to define the scope of confidentiality for the MAP program. The circuit court also thought the regulation inconsistent with what it believed was a legislative change in policy. The problem with this is that the circumstances simply do not support an inference that the legislature intended to change policy at this time. It did remove a specific language, but it removed a number of provisions at the same time. Sections 1 through VI of the same regulation that that was a part of. And other things. But doesn't that generally suggest, though, that the legislature has acted to take that exemption out then? No, Your Honor, because a lot of things were removed at that time, because they were attempting to clarify, to narrow and clarify. So some of the things were moved elsewhere. Well, how do we know that that's what they were doing, that they were attempting to clarify? How do we get to that point? You're saying they were attempting to clarify. Well, there's a statement in the legislative history that says that, which we pointed to in our brief. But also, we know that a number of provisions were added, and one of the provisions that was added at that time was the definition of private information in Section 2C-5, which specifically includes personal financial information in there. But personal financial information isn't defined. No, it doesn't separately define that. We believe the legislature purposely left that broad so that it could encompass a number of different things. And specifically what vis-a-vis this case? Specifically, it would apply to the names, because names necessarily reveal private personal financial information. And you can't get a MAP grant unless there's income need. It's based on need, right? Yes. Okay. You have to be around the federal poverty level. There's a specific calculation that both the federal government and the Commission used. So even though there are not dollar amounts or income levels that would be disclosed as a result of the FOIA request, the inference to be drawn is that if you've been found eligible based on this income eligibility program, you are therefore low income. Yes. That's the argument? That is precisely what it tells people, and we believe that is personal financial information. Okay. What about the amendment? You say right now this would clearly be exempt, wouldn't it, under the later legislation? Yes, there are amendments in 2018 that specifically state that things provided by applicants and the names of applicants to the MAP program would be excluded. But we believe that is a clarification of the act. It does not change what the policy was. And why do we know it's a clarification, as you say? What makes us or helps us conclude that? Well, first, because when you look at the pattern of the statute, it's not a situation where you have targeted language that was removed in response to a judicial decision or some other reason for concern about that particular language. We have a broad reorganization. We had a new 7.5 that was created. A lot of things were moved around. And there is no affirmative evidence anywhere of a desire to change the policy on financial aid. And we also think that it would not silently change a policy that would frustrate or upset the expectations of all these financial aid recipients and their families and also bring the commission into conflict with federal law. Is there anything in the legislative history with respect to the 2018 amendment that would suggest that this was purely clarification? I believe I looked at that. I don't think that I found anything that specifically said that that was clarification. But when you look at the history of the whole thing, you see at a previous time that clearly financial aid was included. You see the background against which we're operating, which is federal law, and which if Illinois did decide to change and make financial aid information disclosable, then the commission is no longer going to be able to use the FAFSA form. Well, that leads me into this question. There's no question, is there, that people are not entitled to FAFSA information. I mean, I don't think that they're entitled to. I don't know if there's any group that is entitled to go in and get financial aid information that people fill out either as the parent or the student. From the Department of Education? Right. No, they can't. And in some way or another, that's really what they're getting here. They're actually getting into FAFSA indirectly, aren't they? Yes, that is what we're saying, Your Honor, because the commission wouldn't have this information. We get this information through the FAFSA transmission that we get from the Department of Education. We wouldn't know that they were in a low-income category. The federal government determines their expected family contribution, and that is the number that we use to make our determinations. So it comes straight from the department, and so we think that the legislature would not have decided silently to frustrate all of this and to cause the commission to have to change its programs to a less efficient way. Did you find any cases outside of Illinois that might have been helpful regarding this kind of Freedom of Information Act request? I didn't look too much at other cases, and this is because we were looking specifically at the requirements under Illinois law, and we also have the federal background. So we have the federal background controlling it. So that is more compelling a comparison than things that might have been done in other states, because if we're doing something that's going to bring us out of consistency with the federal system, that's going to be helpful. I'm just pointing it out. I think there might be a case that, you know, it's not directly on point, but there's nothing specifically here in Illinois that we could look to that you would say clearly, you know, supports what you're requesting in terms of the reversal of the summary judgment, right? Not a case. The regulation, which happened after the 2009 amendment, so it was not abrogated by those, as the circuit court suggested. We also have Section 1B, which says private information, and we have that new definition in 2C-5 that includes personal financial information. And this is clearly personal because it has to do with the individuals, and it's financial because it has to do with their income and their assets. So this is a long shot and maybe the back doorway into an issue with respect to confidentiality. Is there anything in the application process when a family or student is going through that indicates the information is going to be held in confidence? And if there is, how does that gel or is that reconcilable even with the FOIA request? Is there anything in the application that says this information provided for purposes of this application shall be held in confidence? In the FAFSA application? Yes. I'm not sure whether it is in the application itself, but I'm sure that the confidentiality aspects of it are somewhere where people are looking at it, in the instructions or something like that. But it is clear that disclosure of this information is specifically prohibited under federal law. It just doesn't happen directly. It's not imposed on the state directly because what FERPA and the provisions specifically about FAFSA and the Higher Education Assistance Act says is that the Department of Education may not give money under these conditions. I'm just curious as to what an applicant might understand with respect to the disclosure of information about his or her financial status. And also the commission was intending to comply with federal law and to be consistent with federal law, and some of their regulations, like Section 2735, encouraged them to believe that their income and a couple of those criteria would not be disclosed. And here we're talking about, here we have a kind of fuzzy measure. We don't have any direct details, which is something that concerns the circuit court, but these are people who are not likely to have a lot of assets. So it's pretty much going to be income level of the family that we're talking about here when we look at the money. So do you want to kind of try to wrap up here? We'll give you some time for rebuttal. Okay. And then we do have an argument on Section 71C as well. If you need to get there, we think that it's not clear what specific interest he is going to say that he has in this, but it's clear that the interests of these people in avoiding embarrassment and potential prejudice based on their low income status and even harassment. What do you think the interest is? You've been living with this case for a while now. What do I think his interest is? Yeah. Yeah. Tell us if you have an opinion. I'm just curious now that you brought it up. I don't know. I mean, there have been some things in recent news about, you know, well, people emancipating their children for other aid and things like that, or, you know, I don't. But you don't want to comment. Well, I mean, because really I haven't heard anything about what his personal life is. In the case of the Southern Illinois students, it really didn't matter. That was the Lieber thing, right? Is Lieber the one where they sought the information regarding housing? Yes. All right. And in that case, the Supreme Court eventually said that, you know, the fact that it was for a commercial purpose, so what? The FOIA was meant to be what it was meant to be, and public information should be, you know, given out when it's requested under the statute. Right. But there's another case. I guess what I'm trying to say is that maybe the motive really doesn't matter, and I'll ask, you know, counsel, opposing counsel. Well, there is some validity to that. But also, FOIA is supposed to be about monitoring the activities of government, not monitoring the activities of other citizens, and it's not intended to make all citizens public. But the way grants are implemented is maybe of public interest, isn't it? Well, the situation I thought you, Your Honor, was talking about is about people that are committing a kind of fraud by falsely claiming that someone is. Is that one example of where someone could have a legitimate interest in whether programs are being implemented properly? Yeah, that's one possibility. But I think in that case, we're not so much looking at what the department is going to do. Yeah. We're looking at what the private people are doing. They're becoming private inspectors, and that is not what FOIA is about. Yes. That's one thing. And I think also that the interest is outweighed, to the extent that there is an interest in that is outweighed by the – there's a public interest in having this program succeed in leveling the playing field for disadvantaged people. And the more disclosure you have and the more you expose people to the possibility of discrimination, that is going to – may deter applications to the program, and that may be a problem for the state's goals. And also, we have the interest of the individual people in not being embarrassed and not being prejudiced because people have ideas about low-income people or they add other things together. If they add the fact that they're low-income and assume – if they're Hispanic, for instance, and assume they're probably first generation and low-income, they're probably new. Some of your arguments, I think, are more speculative. But I think that the argument that we are talking about income levels, I think, is there because MAP is designed to grant assistance to those who cannot otherwise afford to get into that school, right? Right. But we know that there is prejudice based on just this kind of thing on the income level, and we also know that it sometimes even results in harassment. If we have people going to try to monitor them and judging them based on the shoes that they have or the purse they have, you shouldn't be having that. This is – they have a genuine interest. The people have an interest in not doing that. And there are lots of alternative ways you can get information. Mr. Schwab. Good morning. May it please the Court. This is a case about information, government information, subject to the Freedom of Information Act. In order to justify the failure of the commission to disclose that information, it has an uphill battle. First, all records in custody and possession of a public body are presumed to be open to inspection and copying. Second, courts liberally construe FOIA in order to provide the public with easy access to public information. Third, any public body that asserts a record is exempt from disclosure has a burden of proving by clear and convincing evidence that it is exempt. And finally, the exemptions to disclosure found in Section 7 are to be read narrowly. Right now, though, under the current statute, this information is clearly not permitted. It's exempt, isn't it? That's correct. In fact, I assume that this was in response to this lawsuit, the General Assembly amended FOIA. But that actually just goes to show that it thought that FOIA did not specifically exempt the names of MAP recipients. In the Supreme Court last year, in the Perry case, the Supreme Court found that when the General Assembly amends FOIA after a lawsuit has been brought, in that case it was already, I believe, decided, that the commission is bound by what the law was at the time. You can't go back. You can't move forward and say, well, we changed the law, so we're justifying our previous denial. Well, what about the previous legislative enactment that counsel argues was clearly intended to make this exempt? And then they removed a number of things, and then this newest legislation is really a clarification of the prior law. Well, they removed the specific exemption of names from the previous, two sessions ago, law. And, you know, the law is that we should take from the intent, FOIA especially, again, needs to be, the exceptions need to be read narrowly. If they took out the exception that said names are not disclosable, then we can clearly infer that they didn't specifically mean to exempt names. Now, the fact that the legislature has done that in response to this case, I don't think we can deduce anything related to what the law was at the time that Mr. Timpone brought this case. And, in fact, I think that would be against the, really, the spirit of what the Illinois Supreme Court was saying in Perry last year. Because if we can say, if we have to look at what the law was at the time, but if we can look at the law as it was changed and say, well, clearly they meant to exempt this at the time, then that's really, it comes down to the same thing. Let me ask you this. You agree, don't you, that you don't get a MAP grant unless you're at the basic poverty level? I don't know what the, I tried to find the specific level that, what the cutoff was for MAP grants on ISAC's website today, and I couldn't find it. But I do know that. I don't think it's for lower income. I assume it's for lower income. I know they promote it on their website as why MAP matters, and they say this is important for people who are generally lower income. So I think it's probably a fair assumption to say that the majority of people are lower income. So wouldn't it be just a simple research, Google search or whatever search, to just search MAP application and see what's required, and therein somewhere would likely be the eligibility requirements. If you applied for food stamps, if you applied for medical assistance, if you applied for any kind of aid, it would set forth the eligibility requirements such that an applicant wouldn't waste time. Simple search. There are, there's, it's not a, well, yes, one can do that. But as I found this morning when I was trying to do that, it's not a simple search. There's a calculator for eligibility. You have to find your fastest score. So then you have to go and calculate your fastest score. You have to have a lot of information. Of course, it varies. They ask things like what's your father's income and where's your parents' eligibility. Lots of things. So then they ask things like what's your father's income. Is that not financial data? We're not asking for that. We're not asking for that data. We're just asking that this case is just about the names and colleges. You're asking for the names and colleges of every MAP recipient for a particular year. Correct. And you're saying that there's really nothing here that really suggests that MAP recipients aren't in the lower income levels? I'm not suggesting that. I'm suggesting that the exemptions provided by FOIA, the three that they reference, 1A says that the agency, that the commission has to be specifically prohibited from disclosing the names of MAP recipients in college. And it does that now. It does that today, but it didn't do it before. FOIA specifically does, and that's the only thing that does. They rely on an administrative code. The administrative code says that they are subject to state and federal law. Now they're subject to the FOIA law, right? But the federal law that they cite, the PURPA and the Family Privacy Act, specifically only applies to federal government, to the federal government, or federal aid programs, not state government, not state programs. Do you think that anybody's entitled to somebody's FAFSA information? No, and that's not what we're asking for. No, but you're getting it, aren't you? Backdoorish sort of? Well, in the sense that a name of somebody is information on a FAFSA. What I'm trying to say is that in order to get a MAP grant, let's assume that this is a certain level of income. Your opposing counsel says it's poverty level. You say you're not sure what it is. But I think that the information that is out there on what is MAP indicates that it's designed to give aid to students who couldn't otherwise afford to attend a college. Isn't that correct? Yes. As all financial aid is intended to be. Right. And so, well, I mean, you think, FOIA, that whether or not somebody qualifies for financial aid isn't something that's private personal information. So if we're talking about Section 1B, I don't think that the names of somebody is private personal information in the sense that FOIA specifically defines private information in terms of specific numbers. I don't think you can just talk of it in generalized terms. We are dealing here with a very specific issue. And it's the supplying of names of individuals who have been found eligible, income eligible, to receive MAP. So we're not just talking about names. We're talking about names in the context of eligibility to receive MAP. It's not just names. Okay. But it's still not defined under private personal information. The term private, as the law defines it, refers to things like bank account numbers, social security numbers, things like that. Those are specific. But you're not getting that information when you say John Doe is eligible for MAP. You're saying that his income level and his assets don't rise above a certain level. But you're not getting, you're saying, maybe. But that is not, saying somebody is poor is not defined as private information. It's financial information, isn't it? It is information about one's general income. But how specific, what case do you have that has said it has to be a dollar amount in a bank account when you talk about financial information? Well, first of all, the law itself doesn't define personal private information or personal financial information. The term private information is defined. It uses that term personal financial information, which is not defined. And we're talking, there's, we have, it's a FOIA, it's a FOIA case. For example, Judge House is eligible for MAP and Judge Cobb is not. You're telling the world what my family has. In general. My assets and my family. Right. But also, you know, maybe. But the question is whether FOIA specifically prohibits that. Well, it does now, right? It does now, but the question is. There's no question it definitely prohibits it. Right, so. And maybe. So really. How do you get around this? She's argued, counsel for the agency, has argued that this is, it's information that, I don't know. So is there a case that's. It seems to me that you're trying to do indirectly what you really can't do directly. Well, we can't do directly now. Well, what do you say to her position, Ms. Lebrecht, that this is not a new enactment, it's clarification. So that the legislature never intended for this information to be disclosed. Because FOIA, all the burdens are on the defendant. Sure, sure, we know that. But we've got to have specific, it's got to be specific. 1A is specifically prohibited. There's nothing that specifically prohibits the commission itself from disclosing that information, the names, at the time. Now there is. Yeah. 1B says private information. In its definition of private information, it says private personal information. Private personal information seems to me to be a specific amount, not your general income. Like generally low income or generally high income. There are cases, for example, where a superintendent, for example. Why is it generally low income? Private personal information. There's a case about disclosure of superintendent's income. And so whatever it is. Usually there are a lot in Illinois, apparently. So why is that specific amount disclosed? And the commission says, oh, well, it doesn't produce all of their income. Because there could be more. But if you're a superintendent of a public school, you're probably not having other jobs or getting income from many other sources. Because you're probably devoting a significant amount of time to that time. We could probably assume that if you're a superintendent of a public school and your income is $200,000, that your general income is about $200,000 and you're pretty well off. So why is that allowed to be disclosed? I don't know how you can compare. I think that's like comparing apples to oranges. If somebody makes over $200,000 a year, which is a lot more than a number of people in this country, to compare that to people that are qualifying for MAP grants, which, you know, whether you call it the poverty level or low income, there's a big difference. Well, there's a big difference because what I think you're implying is that we generally have a favorable view of people that make more money and a less favorable view of, at least society tends to, where there are people that specifically target people that are low. But wouldn't that just support the argument that we or that the legislature would not intend that information to be out in the public domain? And so are you also saying that as long as we have a range that your annual income is between $5,000 and $10,000, as opposed to your annual income being $5,001, which is specific, then that's the difference here? Because that's what I hear you arguing. As long as it's general, it's not financial. From the specific point of view of the definition, yes. And also my other point, mentioning the higher income, is that personal information means personal information, personal financial information, and it shouldn't matter whether one's personal financial information shows that one doesn't make a lot of money or that one makes a lot of money. If it's personal information, then it doesn't matter what the amount is. So if the court says that the income of the superintendent is FOIA-able, then how are, just because that's a high amount, why is that not personal? That's really a different thing, though. The income of the superintendent is not based on an income eligibility program. And in our society, we do recognize that income eligibility programs are generally geared to families and individuals who have less than what might be a median or a higher income family. So the salary of a superintendent, which goes to what even the salary of a judge might be, is not income eligibility-based. It's a very different scenario. I don't think you can compare the two. But it specifically explains, almost tells people what the income is, right? So the question is whether it's personal financial information. If it's the salary, and if personal financial information includes what your general income is, then the salary of a superintendent or a judge would seem to fit that definition. Can I ask you about that other case? This one where I didn't talk about it. It's the one where somebody was seeking the information about how legislators are able to give scholarships to two people every year or something or every couple of years. Do you know that case? I'm not sure. Is it Gibson or something? The previous case that has been under the previous version of FOIA? Yeah, it was Gibson. Okay. You didn't talk about that at all. Tell us why you think it's not really significant or in any way something we should concern ourselves with. We did briefly talk about it, and that is that the legislature changed the law. So Gibson is related to a case where the names of these recipients were more specifically prohibited. Why in that case? It was about what would be, I mean, I just don't understand. In that case, that was about someone seeking the names of the individuals that these legislators had the ability to give scholarships to, and they still do, don't they? Yes, but the question in this case is whether FOIA specifically exempts the disclosure of this information or not. So what matters is what FOIA says. Yeah. Wasn't that a FOIA case? It was, but at the time, the law was different. Now the law has changed, and the question is whether they have a specific exemption. Before 2015, would you have said that this was exempt? I mean, probably not. I don't think so, but I'm not litigating that case. I do want to point out a couple of things. One is the 1C argument, the 7-1C argument. They did not make that before the circuit. There's a number of arguments you said that are forthcoming. I don't see how they can rely on it now. It's an affirmative defense, but they didn't raise it. This is summary judgment, is it not? This is summary judgment, but they didn't raise it in summary judgment. They didn't raise it as an affirmative defense. So I think that argument's waived. I'd also like to point out one other thing. Because we are talking about this information and the incomes of people as something that is private, if you go to ISAC's website, you can find on their website a faces of map. And under that link, you can find about a dozen people that it tells the story about. And it tells that they are map recipients. It doesn't tell them exactly how much money they received. But a number of them indicate that these people were low income. It seems a little bit inconsistent to me. Is this in your response? No, this is information I found out last night or this morning when I was going on the website. But as counsel pointed out in their brief, you can take judicial notice of information that's on the government's website, particularly the But do we know whether or not they received a waiver from those individuals? They may have, but I think this goes to the issue of is underlying, is this the fact that people are low income? Is that something that is detrimental or negative? Because the fact is that ISAC is using that information as a positive thing. And I actually think it is. I agree with them. I'm glad they're putting it on their website. Because these are great stories. I read through them. They're chilling stories. These are people that had real struggles, some of them because of low income, some of them because of other family issues. They received some money from the state, and they were able to go to college, and they were able to have successful lives. That doesn't mean that everybody else in the black community wants their picture and their information. That's true, but it also shows that, like, per se, the fact that somebody is receiving money from the government to go to college is not a negative thing. And, in fact, I think most people, and I don't think it's a political thing at all, I think most people, they're in favor of people that have struggled going to college, succeeding, and most people probably even politically are in favor of the MAP program, of the government giving money. So I think it shows that if the issue is, first of all, the point is that there's nothing in FOIA that specifically says this is exempt from disclosure. But if the issue is this feels bad because it might be information and maybe that's detrimental because it's low-income information, I think the fact that ISAC is putting this on the website as a positive thing, and I think it is a positive thing, is relevant. What about arguing an argument that was kind of made in Lieber and that the Supreme Court kind of agreed with you on? I'm trying to remember exactly what it was, but they had mentioned the fact that the same kind of information was already available, and so the claim that it shouldn't be released was a little bit, as you say, inconsistent. It's similar to that argument. And, of course, Lieber specifically says that the names of people under Section 2 is not private information, so they've got to overcome that case, and I don't think they have. Well, I don't think that the question here is whether, you know, we know that names are not necessarily subject, well, they're not private, but what's coming out here is something more. That's one of the arguments. Why shouldn't we look at the equities here? Well, one thing that Your Honor mentioned about the question was why. Why do we want this information? What we're talking about is government expenditures, and government expenditures are important information for the public to know. We want to know how the government's spending their money. Can't you do that without going through the individuals? Because didn't they offer you every single amount that was given for each given year? And isn't there a... I'm sorry, and each school. So can't you get what you're looking for by what they offered you? I'm not sure about that, but, you know, the point is that we need to know, this is disclosures, who is this money going to? So why does that suggest that there's something untoward going on? Why can't you get all you want from getting the information that they were willing to give, and that was here's all the money we gave, here's the number of students we gave it to, and here's the schools they went to. Why can't you get what you want without embarrassing or, you know, letting out information about their families? Well, it may not be embarrassing to you, but there's certainly a reasonable argument that can be made that in order to get MAP money, you have to be at the lower end of the income spectrum. I mean, I think that's a reasonable argument. It's a reasonable policy argument that the General Assembly accepted, but it is not a specific exemption provided for in FOIA at the time. In 2015. At the time in 2015. Look, you didn't answer my question. Why can't you get all that information if that's the why? Because information about expenditures isn't just about how much money it is, it's about where it's going. You know, we don't just disclose how much money that, let's say, the EDGE tax credit program is getting. We want to know, like, is STEERS getting this money? Without asking for their names, could you ask for every single student that got MAP money, that went to a particular school, why couldn't you get it without having their names? Suppose that the government was providing fake names or giving money to students that weren't really in college or things like that, that the names would be important to justify that, you know, to show that this money is actually going to its intended purpose. So wouldn't an audit, which I'm sure every governmental entity is subject to, wouldn't an audit disclose whether, in fact, they were misappropriating MAP dollars? Wouldn't there be an audit finding that would disclose any error? There may or may not be. We don't know. I mean, it's Illinois government, so we never know. But the point is that that's what the point of FOIA is, is disclosure, so that we can check these things. And the more that we are disclosing, the more that the government will be held in check. And hopefully there won't be anything to find. And then there won't be any need to, you know, once he has the media guy, if he finds this information, he looks through it, this all looks good. He's not going to write a story about that. And this might be in your papers, but for what period of time are we? Just the 2015. Just 2015. So we just want to know if they were doing something bad in 2015. I think that I don't know exactly. But, again, he can't get it now because the law has changed. So at the time, I don't know what his motivation was for why, you know, oh, well, we definitely need to check out the MAP program. I don't know exactly what caused him to think that. Are you familiar with any other cases out of Illinois where there was a FOIA request or a similar law where someone was looking for information about scholarship money to athletes? I'm not. I assume you're referencing a specific case. Yeah, yeah. I may have the parties if we decide. I don't think there's much out there anywhere, and I was just curious. Yeah. Again, I think that what's important in this case is the specific language of FOIA at the time. And there's nothing in FOIA at the time that specifically prohibits the disclosure of this information. Well, what if we considered private personal information to include a level of income that is, you know, at poverty level or slightly above? Is there anything that prohibits us from interpreting that statute since it's so broad? Well, of course you can. Yes, there's nothing prohibiting you from. The question is whether that would be a good interpretation. Okay. And why wouldn't it be? I don't think the answer is, yeah, I don't think it would because if you look at the list of what private information includes, it includes specific things, so security numbers, bank account numbers. These are specific information. What's private financial information? I think would also include specific information about one's finances. But not this general overall. This is more general. This is a name of a person that happens to be a recipient of a scholarship. That's not necessarily personal finance. So it's an income-based scholarship. It's income-based. So why isn't it private financial information? Because it's based on that person's income. Well, because, you know, I don't think it doesn't fit the other definitions of things that are more specific. Well, getting back to Judge Kyle's question, what's the difference between saying someone has $5,001 and somebody has slightly above $5,000? I mean, one is real specific and one's not. It's the same thing. Well, that's true. But, you know, I guess what I would say is that, you know, saying that somebody has lower income is a little less general than saying that somebody has more than $5,001 or whatever. So I think it's even less general, or it's even more general. It's the same information. Maybe, but it doesn't tell you a specific amount of income. And, you know, and we're talking about, yeah, I mean, we're talking about lower income, but that encompasses a lot of people, unfortunately. Anything further? No, Your Honor, thank you. All right. Mr. Breck, you may have a brief rebuttal or response. Your Honors, I'd just like to address a few of the things he said. He said that the 2009 amendments removed provision about names. That's not true. The provision that was removed in 2009 that the court was talking about and that Gibson relied on was a provision that talked about students or other individuals receiving educational, and there's other stuff, and I've excerpted some of this, and financial care or services directly or indirectly from public bodies. And what they did in the 2009 amendments is tighten that, and so now you don't have the directly or indirectly educational or financial care or services. You have personal financial information in that narrow definition of private information. Also, in the definition of personal financial information, it doesn't say account numbers. It says most of the things in that list in Section 2C-5 are pretty narrow, things like Social Security numbers, employee identification numbers, biometric identifiers, but there are two that are not so narrow, and those are personal financial information and medical records. And the legislature could have been narrow if they wanted. They could have said things like financial account numbers, account balances. It could have specific documents, but it didn't say that. It chose to say something broader so that it could encompass some of these things. And he has no case that says it has to be more specific. And he has no case in his theory that the law strongly, and Gibson was very strong on this, it's intensely private information, that the law changed from that to all of a sudden we're going to disclose. There's nothing, no case, no piece of legislation he points out that suggests in any way a desire to disclose this information at the point, and now we're back again. We have an amendment that specifically says it's not, and he doesn't explain it. Let me ask you this. You earlier mentioned that this is all the MAP grants are given based on income levels at almost poverty level. Was that right? Yes. Well, the statute, though, says that grants are apportioned among otherwise eligible applicants on the basis of relative financial resources and available funds. What language were you sort of referring to? Because that's sort of very general. I mean, it doesn't really say too much, just relative financial resources and available funds. That doesn't mean that somebody's at a certain income level, does it? I don't remember exactly where it says that they rely on the poverty level, but I do know in the data book it gives all kinds of information. And one of the things it tells you is the mean income of MAP grant recipients, and it compares that to the poverty level as defined by the United States. So it is there. The information suggests clearly that it's based on a mean level of income and it's close to or near. Yes. Okay. It specifically says that. There's a number of sources you have to look at, but that information is there. Okay. All right. And let's see. And, Your Honor, I was talking about the Lieber case and Gibson. Both Gibson specifically says that it matters what information the name will reveal. So you don't just say it's a name so it's separate. And even Lieber, the Illinois Supreme Court, mentions in Lieber that all that you got when you got the names and addresses of these persons who were admitted, that they were admitted in a public university, and there was nothing specifically private about that. I don't know how Lieber is analogous, because that was where somebody was looking for students who applied for housing outside of the university, right? Right. So I don't know what that would disclose. I mean, I don't see how you can compare that to this, where a name can disclose a lot more if what you're saying is accurate, that it suggests that the person who's applying is at a low income level or even poverty level. Yes, and the court was aware of that. It pointed out that all it told you was that they were admitted to a university. And Gibson said that strongly at about the same time period. And I don't believe that there are any more legislative scholarships, but an important difference there is that those were discretionary. So even if you want to say that those – and there was a time when they had to be disclosed, but those are different because they're discretionary, so you don't know something automatically based on these people. And it particularly – There's a difference between a scholarship and a grant. Right. It wasn't based on anything invidious like this. A scholarship takes very different considerations as opposed to a grant. And you can always consent under FOIA to anything. So the fact that a few people consented to have their names on there does not mean that the other people are not subject to prejudice and so on. So is that it? I think if you have no further questions – No, I think we're completely – We will rely on the arguments in our briefs and ask this court to reverse the circuit court's finding  Thank you. The case was well-argued and well-briefed, and we're going to take it under advisement that the court is adjourned.